UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM SCALES,

                            Plaintiff,

        v.

CITY OF NEW YORK, et al.,

                            Defendants.

23 Civ. 9116 (DEH)

**MEMORANDUM
OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Williams Scales, who is appearing *pro se*, brings this lawsuit against the City of New York and Individual Defendants Debra Matias and Thomas Palmato, the NYPD officers who stopped and arrested him.  Construed liberally, Mr. Scales's operative complaint (his Third Amended Complaint, or "TAC") alleges federal claims including that he was illegally stopped, falsely arrested, and subjected to excessive force, as well as a New York state law claim for negligence.[1]  Before the Court is Defendants' motion to dismiss Plaintiff's claims.[2]

For the reasons discussed herein, Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**.  Specifically, all claims except Mr. Scales's claim against the Individual Defendants for an illegal stop are dismissed.

**BACKGROUND**

In his Third Amended Complaint (the "TAC"), Mr. Scales alleges as follows:

On August 21st, 2023, I was illegally pulled over by multiple New York police department vehicles.  I was questioned if my vehicle was stolen on numerous occasions by Officer Debora Matias and wasn't allowed to provide verification.  It was discovered my license was suspended so I was detained by the 1st two approaching officers Officer Matias and her patrol mate Officer Thomas Palmato.  While being arrested I never refused arrest.  Prior to being placed in the cop vehicle I notified the arresting officer officer Palmato that the

---

[1] *See* Third Am. Compl. ("TAC"), ECF No. 22.

[2] *See* ECF No. 32.

handcuffs were extremely too tight, and I requested if he could loosen them for me. Initially he requested that I wait. I notified officer Palmato that I had a recent surgery and visual swelling, and eventually he obliged and attempted to loosen the handcuffs, but they were tightened on my wrist, and cyst, causing intense pain.  I complained to the other officers that were on the scene, that officer Palmato was intentionally tightening the handcuffs and he stated that he wasn't doing it intentionally and the handcuffs were mechanism to release the handcuffs. Officer Palmato stated that he was making the handcuffs tighter in order to get the key into the lock mechanism.  The handcuffs were eventually loosened and I was placed in the back seat of the arresting officers Palmato's and Matias's patrol vehicle and brought to the precinct.

The following days I still experienced pain in my wrist and a burning sensation and had visible handcuff marks on my wrist. The handcuffs marks were present for at least 1 month after the incident.  My wrist was troubling me during a basketball tryout for an NBA G league team that could have resulted in a professional basketball contract and start to a career or other opportunities.  Additionally, I missed days of work and no longer had paid time off from my current employment.  My wrist troubled me daily while typing on a keyboard, while training for basketball, and occasionally while just sitting.  My wrist was swollen slightly for about a week, but my cyst had swollen a tremendous amount and the swelling hasn't left to date.  A few months prior to the incident I had a surgery to remove the cyst from my wrist and the swelling and cyst had lowered tremendously, and may have been removed completely if it wasn't for the handcuffs.[3]

These facts, and, in light of Mr. Scales's *pro se* status, any others asserted in his Opposition Brief,[4] are assumed true for the purposes of resolving this motion.[5]

## LEGAL STANDARDS

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6),[6] a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[7]  A complaint need not contain "detailed factual allegations," but it must offer something "more than an unadorned, the-defendant-

---

[3] TAC at 5-6.

[4] ECF No. 36 ("Pl.'s Opp.").

[5] *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023); *Kiss v. Torres*, No. 21 Civ. 10391, 2024 WL 1210941, at *2 (considering the plaintiff's opposition).  In all quotations from cases, citations, footnotes, brackets, ellipses, and emphases are omitted unless otherwise indicated.

[6] All references to Rules are to the Federal Rules of Civil Procedure.

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

unlawfully-harmed-me accusation."[8]  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]  In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff."[10]  However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"[11]

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."[12]  "Nonetheless, a *pro se* complaint must state a plausible claim for relief."[13]  In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."[14]

## B.  Leave to Amend

"Although district judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile."[15]  "Where the problems with a claim are 'substantive' rather than the result of an 'inadequately or

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* (citing *Twombly*, 550 U.S. at 556).

[10] *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[11] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (quoting *Twombly*, 550 U.S. at 555).

[12] *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

[13] *Id.*; *accord Walker v. Kosann*, No. 23 Civ. 4409, 2024 WL 922642, at *7 (S.D.N.Y. Feb. 16, 2024) ("[E]ven pro se plaintiffs' claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level."), *report and recommendation adopted*, 2024 WL 923314 (S.D.N.Y. Mar. 4, 2024).

[14] *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

[15] *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'"[16]

**DISCUSSION**

Construed liberally, Mr. Scales's Third Amended Complaint ("TAC") alleges federal claims of illegal stop, false arrest, and excessive force, as well as various state law claims. He brings these claims against New York City and Officers Matias and Palmato. The Court discusses these various claims, and issues of municipal and individual liability, in turn.

### I.    Illegal Stop

Mr. Scales alleges that he was stopped by the police for reasons that were objectively false, and which the arresting officers could not have subjectively believed to be true. For reasons explained below, Defendants' motion to dismiss this claim is denied.

The Fourth Amendment prohibits "unreasonable searches and seizures."[17] "The temporary detention of a person when the police have stopped her vehicle, regardless of its brevity or limited intrusiveness, constitutes a seizure for Fourth Amendment purposes, and thus must not be unreasonable."[18] "Accordingly, such stops must be justified by probable cause or a reasonable suspicion based on specific and articulable facts of unlawful conduct."[19]

---

[16] *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 548-49 (S.D.N.Y. 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

[17] U.S. Const. amend. IV.

[18] *Gilles v. Repicky*, 511 F.3d 239, 244–45 (2d Cir. 2007); *see also Diamondstone v. Macaluso*, 148 F.3d 113, 123 (2d Cir. 1998) (same); *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) ("An ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." (internal quotation marks omitted)).

[19] *Scopo*, 19 F.3d 777 at 781 (internal quotation marks omitted).

In his complaint, Mr. Scales conclusorily alleges that he was "was illegally pulled over,"[20] without any additional details that could support the notion that he was subjected to a traffic stop without probable cause or reasonable suspicion.  In his Opposition, however, he elaborates, stating, "I was pulled over by the Officers who claimed my lights were not on, . . . which they were. That was the original approach of the officers, who were driving behind me in a one way lane, who were somehow able to see the lights on the front of my vehicle."[21]  Mr. Scales then goes on to say that he "refus[ed] any wrong doing for my lights" at the time of the stop.[22]  These allegations, if taken as true, could support a claim for an unlawful stop, because they indicate that the officers, who stopped him for purportedly not having his headlights on, had: (1) no objective basis for doing so, as his headlights were in fact on; and (2) no subjective basis for believing that his lights were off, as they were behind him and could not have seen one way or the other if his headlights were off.

In response, Defendants make three arguments.  First, they say that the Court cannot consider factual allegations raised for the first time in an opposition brief.  Normally, that is true; but the Second Circuit has counseled that "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."[23]  Second, Defendants state that an officer's observation of inoperable headlights is sufficient for probable cause.[24]  While Defendants are correct that observing a motorist driving in the dark with their lights off would constitute a valid basis for a traffic stop, Mr. Scales specifically states that his lights

---

[20] TAC at 5.

[21] Pl.'s Opp. at 1.

[22] *Id.*

[23] *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (italics omitted).

[24] ECF No. 38 at 3 ("Defs.' Reply").

"were" on; furthermore, he alleges that the officers could not even have believed that his lights were off, because they were behind him and had no way to observe his headlights.[25]  Mr. Scales also explicitly says that he denied that his lights were off at the time of the stop.[26]  Third, Defendants correctly note that Mr. Scales was driving with a suspended license.[27]  That is true, and as explained below, ultimately justifies their arrest of Mr. Scales (which is fatal to his claim for false arrest).  But the fact that during the traffic stop he was discovered to have a suspended license cannot have provided probable cause or reasonable suspicion to stop him in the first place.

In sum, Mr. Scales has alleged that the Defendants lacked probable cause or reasonable suspicion to stop him.  Discovery may eventually show otherwise—for example, that the officers did in fact see or at least believed that his headlights were off (for example, because they observed his car from the front or side before they arrested him, or because they saw that his taillights were off and from that fact inferred that his headlights were off as well).  But none of that is before the Court at present.  At this stage of the litigation, Mr. Scales has alleged enough to survive a motion to dismiss this claim.

## II.    False Arrest

Mr. Scales's false arrest claim is dismissed because the officers had probable cause to arrest him due to the fact that he was driving with a suspended license.

A federal claim under Section 1983 for false arrest is substantially the same as a claim for false imprisonment under New York law.[28]  To prevail on a New York state law claim for false imprisonment, "a plaintiff must show that (1) the defendant intended to confine [the plaintiff], (2)

---

[25] Pl.'s Opp. at 1.

[26] *Id.*

[27] Defs.' Reply at 3-4.

[28] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."[29]  "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'"[30]

Here, Mr. Scales alleges that he was arrested because, after he was stopped, "[i]t was discovered my license was suspended."[31]  That justifies his arrest.  As the Second Circuit has explained "that a police officer, upon ascertaining from a DMV check that a motorist's license has been suspended," has "probable cause to arrest the[] motorist[]."[32]  Thus, because the police had probable cause to arrest Mr. Scales upon learning that he was driving with a suspended driver's license, his claim for false arrest must be dismissed.

Mr. Scales makes two points in response, but they do not undermine the legality of his arrest.  First, he says that he had "financial woes, leading to a failure of unpaid tickets,"[33] which presumably resulted in his suspended license.  That is regrettable, but it does not render his arrest unlawful.  Second, he correctly notes that "[d]riving without a license can result in many different scenarios that do not include being physically detained, such as receiving a citation and ticket, and having the car parked or even towed by The New York City Police Department."[34]  It is true that the police had other options available to them, and did not have to arrest Mr. Scales.  But as the Second Circuit has explained, "[t]he decision to issue a [desk appearance ticket] in lieu of detention is discretionary," and "a plaintiff fails to state a claim if she argues that her rights were violated

---

[29] *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (alteration in original, internal quotation marks omitted).

[30] *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

[31] TAC at 5.

[32] *McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (Summary Order).

[33] Pl.'s Opp. at 1.

[34] Pl.'s Opp. at 2.

because she was eligible for but was not issued a [desk appearance ticket]."[35]  In other words, while the police did not have to arrest Mr. Scales for driving with a suspended license, they did not violate the law when they chose to do so.  His false arrest claim is therefore dismissed.

### III.        Excessive Force

Mr. Scales's excessive force claim is dismissed because the officers loosened his handcuffs shortly after he complained that they were too tight.

Mr. Scales asserts that he was subject to excessive force when he was handcuffed too tightly.  "Police officers' application of force is excessive . . . if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"[36]  Reasonableness is based on the facts and circumstances of a particular case and is "judged from the perspective of a reasonable officer on the scene" of the incident in question.[37]

"Courts apply a separate standard to claims for excessive force in the use of handcuffs."[38] "It is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion . . . [and] to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."[39]  That being said, "overly tight handcuffing can constitute excessive force."[40]  Thus, "in evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's

---

[35] *Zarkower v. City of New York*, 461 F. Supp. 3d 31, 38-39 (2d Cir. 2020).

[36] *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)), *supplemented*, 108 F. App'x 10 (2d Cir. 2004).

[37] *Graham*, 490 U.S. at 396.

[38] *Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012).

[39] *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214–15 (E.D.N.Y. 2005) (citations omitted).

[40] *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).

pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists."[41]  "As always, this inquiry must reflect the totality of the circumstances, including any facts that bear on whether use of an unusual degree of force may have been justified."[42]

Here, Mr. Scales alleges that after he "complained to the other officers" about the handcuffs, Officer Palmato explained that "he wasn't [tightening them] intentionally and . . . that he was making the handcuffs tighter in order to get the key into the lock mechanism.  The handcuffs were eventually loosened."[43]   When a plaintiff complains of discomfort during handcuffing and "officers take reasonable steps to alleviate the pain, the officers' continued use of handcuffing is not unreasonable."[44]

Thus, because the police loosened Mr. Scales's handcuffs after he complained that they were too tight, his claim for excessive force is dismissed.[45]

---

[41] *Esmont*, 371 F.Supp.2d at 215 (citations omitted).

[42] *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013).

[43] TAC at 5.

[44] *Sagesse v. City of New York*, No. 22 Civ. 8414, 2024 WL 1329802, at *16 (S.D.N.Y. Mar. 28, 2024).  *See also Serrano v. City of New York*, No. 16 Civ. 8105, 2018 WL 3392869, at *10 (S.D.N.Y. July 12, 2018) (tight handcuffing did not establish an excessive force claim when the plaintiff complained that his handcuffs were too tight at the scene of the arrest, and the officers promptly loosened his handcuffs).

[45] In light of the Court's ruling dismissing Mr. Scales's excessive force claim on the grounds that the police loosened his handcuffs after he complained about them, the Court need not address the other arguments raised by Defendants with respect to this claim, such as whether Plaintiff has successfully alleged that the handcuffing was more forceful than necessary, or whether, in light of the short duration of the handcuffing, Plaintiff has successfully alleged an injury to his wrists. *See* ECF No. 34 (Defs.' Mem.) at 9-12.

## IV.    State Law Negligence Claim

Mr. Scales's state law negligence claim is dismissed because he failed to exhaust administrative remedies.[46]  Under New York law, a tort action against New York City or one of its employees first requires that a notice of claim be served on the City within 90 days after the claim arises.[47]  Such a "notice of claim is a condition precedent to the commencement of a suit,"[48] meaning that a tort suit cannot be brought against the City or its employees without a timely notice of claim being filed first.  Here, Plaintiff does not allege that he filed such a notice of claim.  And after Defendants raised this point in their Motion to Dismiss, he did not address it in his Opposition, effectively conceding the issue.  Accordingly, the state law negligence claim is dismissed.

## V.    Municipal Liability

To the extent that Mr. Scales also brings claims against the City of New York, the Second Circuit has explained the standard for such municipal liability claims as follows:

> Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.  *Id*. at 690–91, 98 S.Ct. 2018; *see also Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law").  Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee.[49]

---

[46] Defendants generously construe Mr. Scales's allegations as also attempting to plead a products liability claim.  Even construing his allegations broadly in light of Mr. Scales's pro se status, the Court does not see how they plausibly plead such a claim.  In any event, regardless of whether they could be construed to do so, any such claim would fail for the same reasons as Mr. Scales's negligence claim, namely, the failure to exhaust administrative remedies.

[47] *See* N.Y. Gen. Mun. Law §§ 50-e(1)(a).

[48] Diarra v. City of New York, 771 F. App'x 69, 71 (2d Cir. 2019) (Summary Order).

[49] *Jones v. Town of E. Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691).

Put simply, "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."[50]

Here, Mr. Scales does not allege a custom or policy of the City underlying the events in his Complaint, but rather only challenges individual acts by two police officers.  In some circumstances, such individual acts—if taken "pursuant to municipal policy," or where they are "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware"—can give rise to municipal liability.[51]  But "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State."[52]  That is essentially all that Mr. Scales does here.  He does not plausibly suggest that there is any sort of custom or policy at the root of his claims.  Rather, he points to a single incident—his allegedly unlawful stop, arrest, and handcuffing—which is insufficient to establish the sort of general policy that could form the basis of municipal liability against New York City.  Accordingly, any claims against the City are dismissed.

## VI.    Qualified Immunity

Finally, Defendants contend that any claims against the Individual Defendants must be dismissed on the basis of qualified immunity.  For the reasons stated below, the Court, at this stage of the litigation, cannot reach the same conclusion.

"Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

---

[50] *Id.* at 81.

[51] *Id.*

[52] *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).

11

person would have known.'"[53]  When a defendant invokes qualified immunity, courts engage in a two-part inquiry: whether the facts "make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct."[54]  To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[55]  "An official is therefore entitled to immunity if his action was 'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'"[56]

Further, defendants seeking to raise a qualified immunity defense at the motion to dismiss stage ordinarily "face[] a formidable hurdle . . .  and [are] usually not successful."[57]  This is due to the standard that, at the motion to dismiss stage, a defendant raising a qualified immunity defense must show that "facts establishing arguable probable cause are clear from the face of the [complaint]."[58]

There are no facts on the face of the complaint that could be argued to establish probable cause, so granting a motion to dismiss on these grounds is improper.  In support of their contention

---

[53] *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[54] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[55] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[56] *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999) (internal quotation marks and alterations omitted)).

[57] *Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013); *see also Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) ("This Court has admonished defendants moving to dismiss a suit by reason of qualified immunity that they would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)."); *Medina v. City of New York*, No. 19 Civ. 9412, 2020 WL 7028688, at *10 (S.D.N.Y. Nov. 30, 2020) ("The case law tilts against granting a Rule 12(b)(6) motion on the basis of qualified immunity").

[58] *Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017).

that the Individual Defendants are entitled to qualified immunity, Defendants note that, "[t]o the extent that Plaintiff alleges an illegal stop claim it is not forbidden by federal law to stop a vehicle on a suspicion that it might be stolen."[59]  While true, this does not establish that there was probable cause to believe that Mr. Scales's car was stolen.  Further, in his opposition, Mr. Scales alleges that he was pulled over not on suspicion that his vehicle was stolen (as noted, there is nothing in the papers to suggest that this was so), but rather on the pretext that his headlights were off, when in fact (he alleges) they were not.  *See* Pl.'s Opp. at 1.  He goes on to allege that the Individual Defendants could not have subjectively believed that his headlights were off, as they had no way to see his headlights because they were behind him.  It is well-established that the Fourth Amendment forbids stopping someone for reasons that are objectively unreasonable;[60] and here, Mr. Scales alleges that the basis for his stop was false and that there is no way that the arresting officers could have believed that basis to be true.  In other words, he alleges that they had no objective basis to stop him, and that they subjectively knew this to be true.  Taking Mr. Scales's allegations as true, which the Court must do at this stage of the litigation, the Court cannot conclude at this time that qualified immunity applies to bar his claim against the Individual Defendants for an illegal stop.

---

[59] Defs.' Mem. at 13.

[60] *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 810 (1996).

## VII.    Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."[61]    Here, however, Plaintiff has already amended his pleadings three times.[62]    "[R]epeated failure to cure deficiencies" weighs against granting further leave to amend.[63]    Moreover, Plaintiff has not requested leave to amend, and therefore has not identified how further amendment would cure any deficiencies with his pleadings with respect to his dismissed claims.[64]    At any rate, amendment as to the dismissed claims would be futile here, as the problems with these are substantive, and not merely the result of "inartfully pleaded" allegations.[65]    Accordingly, leave to amend with respect to any dismissed claims is denied.

### CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  Specifically the following claims are dismissed:

- Any claims against the City of New York;

- Any claim for false arrest (related to his arrest for having a suspended driver's license);

- Any claim for excessive force;

- Any state law claims, including for negligence.

---

[61] *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000).

[62] *See* ECF Nos. 11, 25, 29.

[63] *See Vasquez v. Reece Sch.*, No. 22 Civ. 5986, 2024 WL 497433, at *2 (S.D.N.Y. Feb. 8, 2024).

[64] *See id.*

[65] *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 548-49.

Mr. Scales's claim against the Individual Defendants for an illegal stop, however, survives.  The parties are directed to meet and confer, and within 28 days, or by **April 8, 2026**, to submit a proposed case management plan for further proceedings in this case.

The Clerk of Court is respectfully requested to terminate ECF No. 32.

SO ORDERED.

Dated: March 11, 2026
      New York, New York

DALE E. HO
United States District Judge

15